UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Michael E. Hamm, Plaintiff, vs. Ms. Holly Scaturo, Director; NFN Poholochck, Assistant Program Coordinator-BMC; NFN Helff, BMC; Dr. Gothard, Psychologist; NFN Jones, CM/CC; Captain Abney, Dept. of Public Safety; Bryant Morton, Supervisor Activity Therapy; NFN Haley, Governor of State of South Carolina; State of South Carolina Department of Mental Health, Defendants. | ) | C/A No. 9:16-2960-RMG-BM **REPORT AND RECOMMENDATION** |

This action was originally filed by the Plaintiff on or about July 28, 2016 in the South Carolina Court of Common Pleas, Richland County. Plaintiff, a civilly committed inmate under the South Carolina Sexually Violent Predator's Act (SVPA), S.C. Code Ann. §§ 44-48-10 et. seq., has filed this action pro se.[1] As Plaintiff alleges claims under 42 U.S.C. § 1983,[2] the Defendants removed the case to United States

[1]Plaintiff is a frequent filer of litigation in this Court, having filed over twenty cases pro se. Aloe Creme Laboratories, Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970)[a federal court may take judicial notice of the contents of its own records].

[2]42 U.S.C. § 1983 "'is not itself a source of substantive rights, 'but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). A civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.





District Court on August 29, 2016 on the basis of federal question jurisdiction. Plaintiff also appears to assert state law claims for breach of contract and/or breach of trust.

Defendants filed a motion for summary judgment pursuant to Rule 56, Fed. R. Civ. P. on April 10, 2017. On April 11, 2017, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to file a properly supported response, Defendants' motion may be granted, thereby ending his case. On May 15, 2017, Plaintiff filed a response opposing the motion. Defendants filed a reply to Plaintiff's response on May 22, 2017, following which Plaintiff filed a sur reply on June 8, 2017. Defendants' motion is now ripe for review.[3]

**Background and Evidence**

Plaintiff is an inmate confined at the South Carolina Department of Mental Health (SCDMH) as part of the Sexually Violent Predator (SVP) Treatment Program. He is housed in a segregated location within the Broad River Road Correctional Institution pursuant to an interagency agreement between the South Carolina Department of Corrections (SCDC) and the SCDMH.[4] See S.C. Code Ann. § 44-48-100(A).

---

West v. Atkins, 487 U.S. 42, 48 (1988).

[3]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[4]The SCDMH and SCDC have entered into an interagency agreement which provides that the Edisto and Congaree units of the Broad River Road Correctional Institute will be used to house sexually violent predators. See, In re Luckabaugh, 568 S.E.2d 338, 345 (S.C. 2002). Under this agreement, the SCDMH retains all control, care and treatment aspects inside the Edisto and Congaree Units, including internal guards, routine maintenance and sanitation, and for the medical care of committed persons, while the SCDC provides outside security, meals, laundry services and chaplain services. Id. As of December 2016, the operation of the SVP Treatment Program was transferred to Correct Care Recovery Solutions. Scaturo Affidavit, ¶ 4.





Plaintiff has filed this action against the SCDMH, seven of its employees who work in either administrative, treatment, or security positions, and former Governor Nikki Haley.[5] In his Complaint,[6] Plaintiff sets forth numerous general allegations concerning the SVP Treatment Program with which he disagrees or takes issue, but only specifically alleges violations of his constitutional rights due to inadequate treatment and excessive lockdowns and/or undue restraint.[7] His other claims are claims under state law. Plaintiff initially sought injunctive and declaratory relief, as well as monetary damages. However, Plaintiff subsequently dropped his request for injunctive relief.[8]

Plaintiff's first cause of action is for inadequate treatment. Plaintiff alleges that upon entering the

---

[5]Plaintiff also references a person named "Jacobs" as being a party aware of and condoning the alleged unconstitutional conduct set forth in the Complaint. However, Jacobs is not a named Defendant.

[6]Plaintiff's Complaint does not appear to be a verified pleading. See Docket Number 1-1, p. 70; see also Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) [Noting that verified complaints by pro se litigants are considered as affidavits with respect to any factual allegations contained therein that are based on personal knowledge].

[7]As has been the case with some of Plaintiff's previous lawsuits, Plaintiff's Complaint is a hodgepodge of allegations interspersed with various exhibits contained within the text (some of which date back to the early 2000s), in this case totaling some 136 pages. The Complaint also appears to have been drafted for use as a common pleading by all residents of the SVP Treatment Program. As such, many of the allegations concern conditions within the SVP Treatment Program itself. However, Plaintiff's factual allegations applicable to him, as opposed to the residents generally, assert claims regarding inadequate treatment and lockdowns. Therefore, those are the only constitutional claims addressed in this Report and Recommendation.

[8]Plaintiff, in opposing summary judgment, appears to now contest that his claims for prospective relief and injunctive relief have previously been dropped. However, Defendants correctly note that in his Motion to Allow Addendum filed December 21, 2016, Plaintiff stated that the "lockdown and treatment issues" ceased at the end of November, 2016, when Correct Care took over, and that he wished to "end these legal issues". See Court Docket Nos. 21 and 21-1. The Court subsequently issued a Text Order on January 4, 2017 granting Plaintiff's Motion to Allow Addendum, and noting in part that "Plaintiff has withdrawn all claims for prospective relief as well as any claims arising after November 30, 2016". See Court Docket Nos. 21 and 25. In any event, even if Plaintiff was still pursuing his claims for injunctive or declaratory relief (against either these Defendants or, possibly, Correct Care, which has never been added as a Defendant), they would be without merit for the reasons set forth herein, infra.





SVP Treatment Program facility, residents are presented with a contract entitled "Informed Consent to Treatment" (the contract). He asserts that the SVP Treatment Program residents have two options: (1) sign the portion of the form consenting to receive the treatment the SVP Treatment Program provides according to its treatment program and policies; or (2) sign the portion of the form stating that they refuse to participate in the SVP Treatment Program. Plaintiff further asserts that the contract provides, inter alia, that: (1) the resident's case manager/clinical counselor has discussed the course of treatment and that the resident received information about the level of care and treatment; and (2) the resident has received the goals and expectations of the SVP Treatment Program. Plaintiff claims that the treatment plan contemplated in the contract is inadequate as each stage of treatment has no specific goals regarding what type behavior is acceptable and does not provide residents with any educational, vocational, dialectical behavioral, alcohol, drug, or anger management therapy. Plaintiff alleges that Defendants Scaturo, Poholchck, Helff, Jones, and Morton were aware that each resident was required to sign a contract. Plaintiff also alleges that the policies and procedures implemented since Defendants Scaturo, Poholochck, and Helff began working with the SVP Treatment Program go beyond what is necessary for treating the residents in a therapeutic manner. Instead, Plaintiff alleges that the policies and procedures for the SVP Treatment Program are based on staff convenience and resemble those of a maximum security prison.

Plaintiff alleges that the SVP Treatment protocol indicates that residents should move through the treatment program by following their individual treatment plans, participating in treatment, completing treatment assignments, and showing they have changed their thinking. Plaintiff further alleges that the treatment program was designed to be completed within 18 to 24 months, yet seventy five percent of residents have been civilly committed from three to ten years. Plaintiff also complains that the format of the Treatment Program has changed several times over the years, with treatment plans for residents





becoming less detailed, causing residents to remain in the early stages of treatment. For example, Plaintiff asserts that the Treatment Program has changed from a program with specific steps for the resident to complete in order to be released, to its current two hour a week open group discussion format with no objective criteria for residents to complete. Plaintiff also alleges that group therapy sessions are frequently cancelled resulting in no treatment to residents.[9] Plaintiff further alleges that staff turnover and general understaffing in the SVP Treatment Program cause inconsistent treatment, that clinical staff is onsite for only eight hours a day on non holiday weekdays, and that residents are not provided treatment by a psychiatrist or licensed clinical psychologist who is trained to provide meaningful treatment to residents in the SVP Treatment Program. Plaintiff also alleges that although residents receive quarterly and annual reviews, these reviews are inadequate because they fail to consider whether the resident satisfies the requirements for release or provide a risk assessment for the resident. Plaintiff contends that the Defendants Scaturo, Poholochck, and Gothard in their official capacities participated in and supported these inadequate treatment policies, and failed to take any action to change these policies.

In Plaintiff's second cause of action, he claims that his constitutional rights were violated because he was subjected to undue restraint and excessive periods of lockdown. As to his claim of undue restraint, Plaintiff alleges that prior to the time Defendants Scaturo and Abney took over the SVP Treatment Program, residents could move freely about the Edisto Unit and socialize with other residents, and were not locked in their rooms at night. However, now the only time residents can move about freely is when they are locked in their designated living unit; they cannot otherwise move freely about the facility. Further, Plaintiff alleges

---

[9]Plaintiff has submitted some self prepared charts, dating back to 2011, which Plaintiff contends reflect the purported dates that the group sessions were held as well as the dates and reasons that the group sessions were cancelled. However, Plaintiff further states that only the dates and times reflected on the charts from 2014-2016 are (according to him) accurate, because he did not keep accurate records until then.





that, when residents leave the secure facility, they are placed in handcuffs with waist chains and leg irons, and when transported they are placed in a cage inside a van. Plaintiff argues that the restrictions that are now placed on residents' movement are identical to those in a maximum security prison, and that the physical restraint policy is impermissibly applied with no consideration given to the individualized security risk that a resident poses. Plaintiff claims the Defendants Scaturo and Abney were aware of these policies, procedures, and practices related to the unreasonable use of physical restraints and did nothing to stop them from occurring. In fact, Plaintiff alleges they actively participated in such conduct.

As to Plaintiff's claim that he was subjected to excessive lockdowns, Plaintiff alleges that he is confined to his room when he has done nothing wrong. In support of his claim that he was subjected to excessive lockdowns, Plaintiff has submitted detailed charts along with his Complaint. These charts reflect that Plaintiff was locked or confined to his room for a total of 991.47 hours over the course of three years, 2014-2016, for a total of 41.31125 days. Plaintiff urges the Court to apply the "cumulative violation doctrine"[10] to find that the cumulative period of the lockdowns was excessive and, as such, violates the Eighth Amendment. See, generally, Complaint.

In support of summary Judgment, the Defendants have submitted an affidavit from Defendant Kelly Gothard, who attests she holds a Doctor of Clinical Psychology degree and is employed by the South Carolina Department of Mental Health as a licensed clinical psychologist. Dr. Gothard further attests that from October 1, 2014 until December 1, 2016, she was the Chief Clinical Psychologist for the SVP Treatment Program, and was the Chief Psychologist for the SVP Treatment Program from May 2012 through

[10]The cumulative violation doctrine is a concept that has been applied within the context of tolling the trigger date for the statute of limitations, such that where a tort involves a continuing or repeated injury, the cause of action accrues, and the statute of limitations begins to run, from the date of the last injury or when the tortuous acts or omissions cease. See Turley v. Rednour, 729 F. 3d 645, 651 (7th Cir. 2013).





October 2014. Dr. Gothard attests that she is familiar with Plaintiff and his allegations. With respect to Plaintiff's allegation that he received inadequate treatment, Dr. Gothard attests that the program used by the SVP Treatment Program to treat residents, including the Plaintiff, was Cognitive Behavior Therapy. Dr. Gothard attests that this is a group-based program with an open-ended format, and is designed to assist the resident in learning skills both to avoid offending and to lead a meaningful life once released. Dr. Gothard attests that residents in the SVP Treatment Program were scheduled for at least two hours of group treatment weekly, and that residents also had the ability to participate in supplemental psycho educational groups (as staffing and group space allowed) in addition to the two hours of group therapy. Dr. Gothard attests that treatment is ongoing and is not limited to time in group sessions. Further, Dr. Gothard attests that the goal of the SVP Treatment Program is that the resident will participate in his treatment to the best of his ability so that he can be discharged and lead a productive life when he is determined to be safe to be at large and not likely to sexually re-offend.

Dr. Gothard has attached the Plaintiff's most recent Annual Review pursuant to S.C.Code Ann. § 44-48-110 to her affidavit as an exhibit. This Annual Review, which was prepared by Dr. Marla Domino, indicates, inter alia, that Plaintiff has been resistant to actively engaging in treatment. Dr. Gothard attests that, in her professional opinion, the SVP Treatment Program has made available to Plaintiff the appropriate treatment modalities and opportunities to allow him to improve, but that Plaintiff has participated only minimally in group and that Plaintiff's own behavior and poor participation appear to interfere with his treatment progress. Finally, Dr. Gothard attests that all decisions that she made regarding the Plaintiff were made in the exercise of her professional judgment and discretion in weighing competing considerations, and in light of the appropriate professional standards. See, generally, Gothard Affidavit., with attached Exhibit.

With respect to Plaintiff's claims of excessive lockdown and undue restraint, the Defendants have





submitted an affidavit from Defendant Holly Scaturo, who attests that she was employed by the State of South Carolina and the South Carolina Department of Mental Health as the Director of the SVP Treatment Program until December 1, 2016, when the operation of the SVP Treatment Program was transferred via contract to Correct Care Recovery Solutions. Scaturo further attests that she is a registered nurse pursuant to the laws of South Carolina. Scaturo attests that residents of the SVP Treatment Program are housed in the Edisto and Congaree units at Broad River Correctional Institution, a maximum security prison, pursuant to the terms of an Interagency Agreement between the SCDMH and SCDC, and that residents of the SVP Treatment Program are housed in a maximum security setting because the South Carolina General Assembly has determined that the residents are dangerous. Therefore, residents of the SVP Treatment Program are subject to being searched, require supervised visits, receive limited personal items, receive monitored telephone calls, and have other living restrictions, which Scaturo attests are necessary to maintain order.

With respect to Plaintiff's claims that he was subjected to excessive lockdowns, Defendant Scaturo attests that an increase in lockdowns occurred in March to April 2015 due to construction and painting in the Edisto Unit, which required the lockdown of residents. Defendant Scaturo also attests that the Congaree and Edisto units are sometimes locked down due to staff shortages when numerous staff are off site because residents are being transported to medical appointments, and that residents in the SVP Treatment Programs are also locked down whenever inmates from the Broad River Road Correctional Institution enter into either the Edisto or Congaree units, both for the safety of the residents and the safety of the inmates. Defendant Scaturo attests that while residents are on lock down, they are confined to their rooms, which contain a bed, desk and locker, as well as a sink and toilet facilities. Scaturo attests that if a resident has a medical emergency or needs to leave his room due to certain circumstances, all they have to do is alert the SVPTP Staff, and they are taken to medical.





Defendant Scaturo attests that all decisions she made regarding the Plaintiff were pursuant to the exercise of her professional judgment and discretion in weighing competing considerations and in light of appropriate professional standards. Defendant Scaturo also attests that she was at all times acting within the course and scope of her official duties as the Director of the SVP Treatment Program during the time period at issue, and that she was acting within the course and scope of her employment in a discretionary manner, in good faith, and without bad faith or malicious motives in the performance of her official duties. See generally, Scaturo Affidavit.

As to Plaintiff's claim that he received inadequate treatment prior to December 1, 2016, Plaintiff has submitted with his response to summary judgment, SVP Treatment Group Progress Notes from 2013-2014 that reflect instances where group therapy sessions were cancelled for various scheduling reasons as well as group therapy sessions that Plaintiff was absent from along with the reasons for his absence. As to Plaintiff's complaints of excessive lookdown and/or undue restraint, Plaintiff has submitted a Request to Staff concerning lockdowns and numerous incident reports that document the lockdown periods over a course of three years that Plaintiff contends were implemented for various reasons. See generally, Plaintiff's Exhibits.[11] As attachments to his motion to Allow Addendum on December 12, 2016, Plaintiff also submitted some hand made charts which purportedly show treatment and lock-down hours during November 2016, which were added as attachments to Plaintiffs Complaint for purposes of his claims. (Dkt. Nos. 21 & 26). See also, n. 9, supra.

**Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

[11]These exhibits total some 197 pages.

issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

Here, after careful review of the arguments and evidence submitted, the undersigned finds for the reasons set forth hereinbelow that the Defendants' motion for summary judgment should be granted, in part, with remand of Plaintiff's remaining claims back to state court.

**I.**

**(Constitutional Claims)**

First, the Defendants SCDMH and Nikki Haley are entitled to dismissal as party Defendants under Plaintiff's constitutional claims. The SCDMH, as an agency of the State, does not qualify as a "person" subject to suit under 42 U.S.C. § 1983. Price v. Sanders, No. 07-3924, 2008 WL 5076859, at *1 (D.S.C. Nov. 21, 2008) ["It is well-settled that an agency of the state [SCDMH] is not a "person" within the meaning of § 1983, and thus is not a proper defendant."], aff'd. 339 Fed. App'x. 339 (4th Cir. 2009); see also Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). As for the Defendant Governor Nikki





Haley, other than appearing in the caption and being listed as a defendant, she is not named in any factual allegations evidencing any personal responsibility or wrongdoing in connection with the alleged violations of Plaintiff's constitutionally protected rights. Federal Rule of Civil Procedure 8(a) provides that pleadings shall contain "short and plain statement [s]" of the basis for the court's jurisdiction and of the basis for a plaintiff's claims against each defendant. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) [requiring, in order to avoid dismissal, a short and plain statement of the claim showing that the pleader is entitled to relief against a named Defendant, so as to give the Defendant fair notice of what the claim against them is, and the grounds upon which it rests.]. Here, Plaintiff fails to allege any facts, or present any evidence, from which the Court can construe a cognizable claim that Defendant Haley committed any specific violation of Plaintiff's constitutionally protected rights.[12] As such, Defendant Haley should be dismissed as a party Defendant under Plaintiff's constitutional claims. See Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1999) ["Liability . . . must be based on the personal involvement of the Defendant"], cert. denied, 522 U.S. 1154 (1999); see also Horton v. Marovich, 925 F.Supp. 540, 543 (N.D.Ill. 1996) ["Thus, a Plaintiff suing a government official in his individual capacity and therefore seeking to hold the official personally liable must show that the official personally caused or played a role in causing the deprivation of a federal right"].

With respect to the remaining Defendants, Plaintiff is being held by the SCDMH pursuant to the provisions of the SVPA.[13] Under the SVPA, an individual convicted of a sexually violent offense may

[12]To the extent Plaintiff has named Haley as a party Defendant on the theory that, as [then] Governor of South Carolina, she is ultimately responsible for the actions of state employees, that claim is without merit. The doctrines of vicarious liability and respondent superior are not applicable in § 1983 cases. See Vinnedge v. Gibbs, 550 F.2d 926, 927-929 , nn. 1-2 (4th Cir. 1977).

[13]Notably, as he has in several of his prior cases, Plaintiff appears to be arguing that the entire SVP program, and therefore his continued incarceration, is unconstitutional. However, as Plaintiff is well





continue to be held following release from a prison sentence if they are classified as a sexually violent predator; see S.C. Code Ann. § § 44-48-60, 44-48-70; and the SCDC and the SCDMH have entered into an interagency agreement whereby the Sexually Violent Predator Treatment Program residents are housed in a segregated location within the Broad River Correctional Institution. Even so, as an involuntarily committed patient, Plaintiff retains a liberty interest in receiving reasonable care and safety in a reasonably non-restrictive condition of confinement. Youngberg v. Romeo, 457 U.S. 307, 324 (1982); see Seling v. Young, 531 U.S. 250, 265 (2001) ["[D]ue process requires that the conditions and duration of confinement under the [Sexually Violent Predator] Act bear some reasonable relation to the purpose for which persons are committed"].

As a civilly committed inmate, Plaintiff's custody status most closely resembles that of a pre-trial detainee. Lingle v. Kibby, 526 Fed. Appx. 665, 667 (7th Cir. Apr. 15, 2013) [Civilly committed persons are treated as pretrial detainees]; Valbert v. South Carolina Dep't. of Mental Health, No. 12-1973, 2013 WL 4500455 at * 9 (D.S.C. Aug. 20, 2013), aff'd 549 Fed. App'x 179 (4th Cir. Dec. 24, 2013)[same]; Treece v. McGill, No. 08-3909, 2010 WL 3781695 at * 4 (D.S.C. Sept. 21, 2010) ["A civilly committed individual under the SVPA most closely resembles the custody status of a pre-trial detainee."] (quoting LaSure v. Doby, No. 06-1527, 2007 WL 1377694 at * 5 (D.S.C. May 8, 2007); Tillman v. Dixon, No. 10-5032, 2011 WL 5119187 at *9 (W.D.Wash. Aug. 12, 2011) [The rights of those civilly committed are analyzed using the same standards that apply to pretrial detainees], adopted by, 2011 WL 5118750 (W.D.Wash. Oct. 27, 2011); cf. Larch v. Gintoli, 04-1962, 2006 WL 895019, at ** 3-4 (D.S.C. Mar. 31, 2006). Therefore, Plaintiff's conditions of confinement claim is evaluated under the due process clause of

---

aware, the SVPA and its procedures have been upheld as a constitutionally valid exercise of the State's power to protect citizens from sexually violent predators. In re: Luckabaugh, 568 S.E.2d. at 348.





the Fourteenth Amendment. Bell v. Wolfish, 441 U.S. 520, 535, n. 16 (1979); but see also Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988) [Holding that the Fourteenth Amendment guarantees at least Eighth Amendment protections]. Under the Eighth Amendment, protection against cruel and unusual punishment includes protection against inhumane conditions of imprisonment. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir.1996).

In determining whether a civilly-institutionalized individual's constitutional rights have been violated, the courts must balance the individual's liberty interest against the relevant state interests, but deference must be given to the decisions of professionals. Youngberg, 457 U.S. at 321. "[T]he decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id. at 323. Further, "[i]n determining whether the State has met its obligations . . . decisions made by the appropriate professional are entitled to a presumption of correctness. Such a presumption is necessary to enable institutions of this type . . . to continue to function". Id., at 324. Therefore, in order to avoid summary judgment, the evidence must be sufficient to create a genuine issue of fact as to whether any named Defendant failed to exercise the level of professional judgment required by Youngberg. See Patten v. Nichols, 274 F.3d 829, 838 (4th Cir. 2001) [Denial of medical care claim brought by an involuntarily committed patient "must be measured against the professional judgment standard articulated by the [Supreme] Court in Youngberg"]; Dudley v. Food Service - Just Care, 519 F.Supp.2d 602, 607 (D.S.C. 2007) [Youngberg standard applies to claims that are non-medical in nature]. Plaintiff has failed to submit any such evidence.

First, as to Plaintiff's claim of inadequate treatment, none of the exhibits Plaintiff attached to his



Complaint (consisting of copies of Group progress notes from 2013-2014, a portion of a report for an individual named William Branson, and memorandum from 2006 discussing the SVP Treatment Program at that time, and grievance and other documents, many of which are hand-written), or his exhibits attached to his opposition to summary judgment, present a genuine issue of fact as to whether any named Defendant substantially departed from any accepted professional judgment, practice or standard in administering or providing care to Plaintiff. Plaintiff just disagrees with the treatment program being provided. That is not "evidence" of a constitutional violation. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; see also Drakeford v. Thompson, No. 09-2239, 2010 WL 4884897, at * 3 (D.S.C. November 24, 2010), citing Larken v. Perkins, 22 Fed. Appx. 114, 115 (4th Cir. 2001)[Noting that non-movant's "own, self-serving affidavit containing conclusory assertions and unsubstantiated speculation, . . . [is] insufficient to stave off summary judgment"]; cf. Deans v. Wadman, No. 12-662, 2013 WL 6050348, at * 3 (D.S.C. Nov. 15, 2013) [Citing to Youngberg standard and noting that a "Plaintiff who claims a delay in medical treatment rose to a constitutional violation must provide verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed"].[14]

Conversely, the Defendants have provided an affidavit from Dr. Gothard, a Doctor of Clinical Psychology, attesting that in her professional judgment the SVP Treatment Program has made available to Plaintiff the appropriate treatment modalities and opportunities to improve. This is relevant, probative

[14]Part of Plaintiff's claim involves cancellations or his missing treatment sessions. However, Plaintiff's own exhibits fail to demonstrate any "punishment" motives behind his not receiving these services, which include cancellations for such varied reasons as state holidays, clinical training, maintenance issues, for (on one occasion) a "cookout", and because the Congaree Unit was opening. Plaintiff also was himself noted as not attending some of those sessions. In any event, Plaintiff has failed to show how any of these cancellations resulted in a violation of his constitutional rights. Deans, 2013 WL 6050348, at * 3.





evidence from a medical professional that Plaintiff is being provided with proper medical treatment for his condition. See Savidge v. Fincannon, 836 F.2d 898, 907-908 (5th Cir. 1988) [Civilly committed patient's right is to "minimally adequate . . . medical care"]; cf. Patten, 274 F.3d at 845-846 [Granting summary judgment where the evidence was insufficient to give rise to a genuine issue of fact that the defendants "so substantially departed from professional standards that their decisions can only be described as arbitrary and unprofessional."] Plaintiff's own lay opinion that this was not a proper treatment program or that a different type of treatment regimen should have been utilized, without any competent medical evidence to support this claim or argument, is not sufficient to avoid summary judgment. Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine . . . medical fitness, whether physical or mental; that is what independent medical experts are for."]); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances]; Kollyns v. Chavez, No. 05-3022, 2006 WL 2459484, at * 2 (D.S.C. Aug. 23, 2006) ["To state a claim pursuant to the Fourteenth Amendment requires a plaintiff to provide proof of more than mere negligence [even assuming any negligence has been shown] in diagnosing and treating medical complaints"]. Thus, Plaintiff has failed to establish a genuine issue of fact that any named Defendant violated the applicable professional judgment standard. Youngberg, 457 U.S. at 322-323 ["Courts must show deference to judgment exercised by a qualified professional].

Nor has Plaintiff presented evidence sufficient to give rise to a genuine issue of material fact as to whether his due process rights were violated due to the alleged "undue" restraint and/or lockdowns imposed on residents of the SVP Treatment Programs. Plaintiff's own exhibits show that the reasons for the Unit's occasional lockdowns usually were the result of staff shortages when too many inmates required





transportation or similar types of issues, with lockdowns then being necessary to ensure both staff and residents' safety and security during those periods. Other reasons for these periodic lockdowns (according to Plaintiff's own exhibits) were maintenance issues, power outages, a gas leak, incidents among or between inmates, unit renovations, and even a flu outbreak.[15] None of these exhibits evidence a constitutional violation.

Periodic lock downs and restraints on freedom of movement by SVP residents is an unfortunate but necessary fact of confinement, and Plaintiff has presented no evidence that the lockdowns or use of restraint at issue here were used to punish him, nor has he shown that there was not a legitimate, non-punitive basis for their use. Cf. Miller v. Powers, Civil Action No. 6:08–4177–HFF, 2009 WL 255983 (D.S.C. Feb. 2, 2009) [holding that a pretrial detainee's Fourteenth Amendment rights were not violated by the conditions of confinement during an eleven-day lockdown, absent a showing of expressed intent to punish on the part of the correctional officials]; Graham v. Christie, No. 10-2010, 2010 WL 411717 at * 8 (D.N.J. Oct. 18, 2010). Hence, as presented, these claims do not "demonstrate any deprivation of a constitutional magnitude". Treece, 2010 WL 3781695, at * 5; see also Dudley, 519 F.Supp.2d at 607 [Youngberg standard applies to claims that are non-medical in nature].[16]

---

[15] Moreover, by Plaintiff's own calculations, the total time he was locked or confined in his room during the over 26,000 hours that passed in the three year period of 2014-2016 was only 991.47 hours (or approximately 41 days out of almost 1100). See Complaint, pp. 24-24-K (Docket No. 1-1, pp. 42-54).

[16] Plaintiff may also be attempting to assert a violation of his constitutional rights because (according to the Plaintiff) the Defendants have not followed their own policies and procedures in restraining and/or transporting residents. However, even if this is one of Plaintiff's claims, the violation of a policy or procedure by a Defendant (even if such had been shown in the evidence) is not in and of itself a violation of Plaintiff's constitutional rights, and is therefore not a claim assertable in a § 1983 case. See Keeler v. Pea, 782 F.Supp. 42, 44 C.D.S.C. 1992); cf. Scott v. Hamidullah, C/A No. 3:05-3027-CMC-JRM, 2007 WL 904803 *5 n. 6 (D.S.C. March 21, 2007) (citing Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)); Johnson v. S.C. Dep't of Corrections, No. 06-2062, 2007 WL 904826 at *12 (D.S.C. Mar. 21, 2007) ["Plaintiff's allegation that defendants did not follow their own policies or procedures,





Accordingly, Defendants' motion for summary judgment on this claim should be granted. Meachum v. Fano, 427 U.S. 215, 225 (1976) [Fourteenth Amendment liberty interest is not implicated merely because a prisoner is transferred within an institution or subjected to more severe rules]; cf. Youngberg, 457 U.S. at 323 [liability may be imposed only when evidence is submitted to show that "the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment"].[17]

**II.**

**(Remaining State Law Claims)**

The remainder of Plaintiff's claims, for breach of contract and breach of trust, are asserted under state law. When federal claims presented in a case originally filed in state court are dismissed, any remaining state law claims are ordinarily remanded back to state court for resolution under the general doctrine developed in United Mine Workers v. Gibbs, 383 U.S. 715 (1966). See In Re Conklin, 946 F.2d 306, 324 (4th Cir. 1991); Nicol v. Imagematrix, Inc., 767 F.Supp. 744, 746, 749 (E.D.Va. 1991); Mills v. Leath, 709 F.Supp. 671, 675-676 (D.S.C. 1988); Carnegie-Mellon v. Cohill, 484 U.S. 343 (1988); Taylor v. Waters, 81 F.3d 429, 437 (4th Cir. 1996). This doctrine recognizes the state court's role in determining whether summary judgment on state law claims is warranted. Gibbs, 383 U.S. at 726 ["Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well"]. As such, remand of

---

standing alone, does not amount to a constitutional violation."] (citing Riccio, 907 F.2d at 1469 [if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue]).

[17]Because the undersigned has determined the Defendants are entitled to summary judgment with respect to the merits of Plaintiff's constitutional claims, Defendants' remaining arguments for dismissal regarding qualified immunity, the statute of limitations, and injunctive relief have not been separately addressed.





these remaining state law causes of action will allow the more appropriate court to rule on these exclusively state law issues. See Carnegie-Mellon v. Cohill, 484 U.S. at 350, n. 7 ["[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state law claims."].

Therefore, if the Court adopts the recommendation herein for dismissal of Plaintiff's federal claims, Plaintiff's remaining state law causes of action should be remanded back to state court for disposition. See Clark v. Brown, 861 F.2d 66, 68 (4th Cir. 1988)[Directing dismissal of state law claims on remand following dismissal of Plaintiff's federal § 1983 claim]; Mills, 709 F.Supp. at 675-676 [Noting that federal courts should generally decline to exercise pendant jurisdiction over remaining state law claims after dismissal of federal claims in a lawsuit].

**CONCLUSION**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted** with respect to Plaintiff federal § 1983 claims for inadequate treatment and excessive lockdown and undue restraint, and that those claims be **dismissed**. Plaintiff's remaining state law claims should then be **remanded** back to state court for disposition. If the Court adopts this recommendation, any other pending motions will be **moot**.

The parties are referred to the Notice Page attached hereto.

August 10, 2017
Charleston, South Carolina

Bristow Marchant
United States Magistrate Judge





**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).